# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Terri Owen, et al., | No. CV-16-4415-PHX-SMM |
| Plaintiffs, | |
| v. | **ORDER** |
| Angry Crab Shack Corp., et al., | |
| Defendants. | |

Pending before the Court is the parties' Joint Motion for Approval of FLSA Settlement and to dismiss this case. (Doc. 66.)

Under the reasoning set forth in Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1352-53 (11th Cir. 1982), there are only two ways in which back wage claims under the Fair Labor Standards Act ("FLSA") can be settled or compromised by employees.[1] One, pursuant to 29 U.S.C. § 216(c), the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owing to them. Id. at 1353. The second way is provided in the context of litigation brought directly by employees against their employer pursuant to § 216(b) to recover back wages. Id. When an employee brings a private action for back wages and presents to the district court a proposed settlement, the district court "may enter a

---

[1] While the Ninth Circuit has not specifically addressed this issue, district courts in the Ninth Circuit have followed the reasoning set forth in Lynn's Food Stores. See, e.g., Ambrosino v. Home Depot U.S.A., Inc., No. CV 11-1319, 2014 WL 3924609 (S.D. Cal. Aug. 11, 2014); Hand v. Dionex Corp., No. CV 06-1318, 2007 WL 3383601 (D. Ariz. Nov. 13, 2007).

stipulated judgment after scrutinizing the settlement for fairness." Id.

Outside of the FLSA context, the Court normally does not rule on a private settlement agreement negotiated between the parties. However, because this is an FLSA action against Defendants, the parties must seek approval of their settlement agreement in order to ensure its enforceability. The Court may approve the settlement if it is a fair and reasonable compromise of the issues.

*The Settlement Agreement*

The parties have stipulated to a $185,000 settlement paid by Defendants, of which $61,666.67 goes to Plaintiffs' counsel, $5,901.90 goes to litigation costs, $5,000 ($2,500 each) goes to the two named Plaintiffs as a service award and for participating in the settlement mediation, and $10,000 ($2,000 each) as a service award for the other five named Plaintiffs, and the remaining $102,431.43 will be "paid proportionally to the amount of hours each class member worked for Defendants at the tip credit rate as shown in discovery documents Defendants provided to Plaintiffs." (Doc. 66-2.)

Attorneys' Fees and Litigation Costs

The settlement agreement provides for $61,666.67 in attorney's fees, an amount "justified by the representation agreement or opt-in form signed by each of the Plaintiffs and opt-in Plaintiffs, and the uncertainty and complexity of the litigation." (Id.) Although the representation agreement provided for a 40% contingency fee, Plaintiff's counsel reduced his fee to 33 1/3%. (Id.) The settlement agreement further provides for litigation costs in the amount of $5,901.90.

The FLSA provides that the court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). "In 'common fund' cases where the settlement or award creates a large fund for distribution to the class, the district court has discretion to use either a percentage or lodestar method" to determine attorneys' fees. Hanlon v. Chrysler Corp., 150

F.3d 1011, 1029 (9th Cir. 1998) (further citation omitted).[2] Under the percentage method, a court awards the attorneys a percentage of the fund "sufficient to provide class counsel with a reasonable fee." Hanlon, 150 F.3d at 1029. In this Circuit, the benchmark award is 25% of the recovery obtained. Vizcaino, 290 F.3d at 1047-48. Selection of the 25% benchmark, or any other rate, must be supported by findings that take into account all of the circumstances of the case. Id. at 1048.

Here, the Court finds a 25% award to be reasonable under the percentage method given the modest length of this litigation (appx. 13 months), the lack of any exceptional result for the class, extreme risk to counsel, benefits beyond the cash settlement, or extraordinary burdens on counsel. See id. at 1049-50. Further, the Court does not find significant justification for 33 1/3% award based on counsel's statement that the case involved a substantial degree of factual complexity and a significant risk of non-recovery due to its contingency status. (See Doc. 66 at 13-14.) Therefore, the Court will decrease the award from 33 1/3% to 25%, or from $61,666.67 to $46,250. The $15,416.67 denied to counsel for Plaintiffs will be added to the net recovery of the class. The Court will grant Plaintiffs' substantiated request for $5,901.90 in litigation costs.

Service Awards

There are seven named Plaintiffs. The settlement agreement provides $2,000 service awards each for five of the named Plaintiffs and $2,500 for the two named Plaintiffs that participated in the settlement mediation, in a total amount of $15,000. (Doc. 66-2 at 3.)

Service awards, also known as incentive awards, are distributed at the court's discretion. See Rodriguez v. West Publishing Corp., 563 F.3d 948, 958 (9th Cir. 2009). Incentive awards are payments to class representatives for their service to the class in bringing the lawsuit. Radcliffe v. Experian Information Solutions, Inc., 715 F.3d 1157, 1163 (9th Cir. 2013). Such awards are "fairly typical" and "intended to compensate class

---

[2]In some cases, courts use both methods, with the lodestar method serving as a cross-check on the percentage method. See Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1050 (9th Cir. 2002).

representatives for work done on behalf of the class, [and] to make up for financial or reputational risk undertaken in bringing the action...." Rodriguez, 563 F.3d at 958. Incentive awards are generally sought after a settlement or verdict has been achieved. Id. at 959. Courts must "scrutinize carefully the awards so that they do not undermine the adequacy of the class representatives." Radcliffe, 715 F.3d at 1163.

Class representatives are entitled to reasonable awards for their service. See Staton v. Boeing Co., 327 F.3d 938, 977 (9th Cir. 2003). In determining the reasonableness of a service award, courts consider "the actions the named plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, the amount of time and effort the plaintiff expended in pursuing the litigation, and reasonable fears of workplace retaliation." Id. (internal quotations and further citation omitted). Also relevant is the number of class representatives, the average incentive award amount, and the proportion of the total settlement spent on incentive awards. See id., at 977-78; In re Online DVD-Rental Antirust Litigation, 779 F.3d 934, 947 (9th Cir. 2015). Staton provides a benchmark against which to measure these factors, as demonstrated by the Ninth Circuit in Online DVD-Rental:

> Here, incentive awards are $5,000, an amount we said was reasonable in Staton. $5,000 is considerably less than the average of $30,000 in Staton. There are nine class representatives, compared with the 29 in Staton. Finally, the $45,000 in incentive awards makes up a mere .17% of the total settlement fund of $27,250,000, which is far less than the 6% of the settlement fund in Staton that went to incentive awards. Thus, under Staton, the district court did not abuse its discretion in approving the settlement awards...

Online DVD-Rental, 779 F.3d at 947-48.

In similar fashion, this Court will use Staton as a benchmark in determining the reasonableness of the service award in this case. Here, the number of class representatives and the average incentive award are reasonable under Staton. The service awards are $2,500 each for the two named Plaintiffs who participated in the settlement mediation and $2,000 each for the other named Plaintiffs. This is significantly less than the $30,000 average award in Staton, and far less than the $5,000 service awards deemed reasonable in Staton. Here, there are seven class representatives, compared to Staton's 29 class representatives.

1    The proportion of the total settlement spent on incentive awards, however, is
2 unreasonable under Staton. The total of $15,000 in service awards makes up more than 8%
3 of the total settlement amount, a percentage rejected in Staton. Staton, 327 F.3d at 948-49.
4 Moreover, 8% is far greater than the .17% deemed reasonable in Online DVD-Rental, 779
5 F.3d at 947-48; far greater than the .57% deemed reasonable in In re Mego Financial Corp.
6 Securities Litigation, 213 F.3d 454, 458 (9th Cir. 2000); and far greater than the miniscule
7 percentages deemed reasonable by courts in this Circuit in FLSA cases with settlements of
8 less than $1 million (see Avila v. Cold Spring Granite Co., No. CV- 16-001533, 2018 WL
9 400315, at *2, *14 (E.D. Cal. Jan. 12, 2018) (approving service award making up 1% of
10 $500,000 settlement); Padan v. West Business Solutions LLC, No. CV-15-00394, 2017 WL
11 6626358, at *1, *3 (D. Nev. Nov. 16, 2017) (approving incentive award making up 1.07%
12 of $700,000 settlement); Bell v. Consumer Cellular, Inc., No. CV-15-941, 2017 WL
13 2672073, at *2 (D. Ore. Jun. 21, 2017) (approving incentive award making up .27% of
14 $900,000 settlement); Saravia v. Dynamex Operations West, LLC, No. CV-14-05003, 2017
15 WL 1295069, at *4 (N.D. Cal. Apr. 7, 2017) (rejecting service award making up 1.5% of
16 $500,000 settlement and instead awarding a service award making up .2% of the settlement);
17 Millan v. Cascade Water Servs., Inc., No. CV-12-01821, 2016 WL 3077710, at *1, *13 (E.D.
18 Cal. Jun. 2, 2016) (approving service award making up 2.3% of $150,000 settlement); Otey
19 v. CrowdFlower, Inc., No. CV-12-05524, 2014 WL 12643008, at *2, *8 (N.D. Cal. Dec. 26,
20 2014) (approving service award making up 1.87% of $585,507 settlement); Ching v. Siemens
21 Indus., Inc., No. CV-11-04838, 2014 WL 2926210, at *1, *7 (N.D. Cal. Jun. 27, 2014)
22 (approving service award making up 1.17% of $425,000 settlement); Dickerson v. Cable
23 Commc'ns, Inc., No. CV-12-00012, 2013 WL 6178460, at *1, *4 (D. Ore. Nov. 25, 2013)
24 (approving incentive award making up .72% of $550,000 settlement); Eddings v. Health Net,
25 Inc., No. CV-10-1744, 2013 WL 3013867, at *3, *7 (C.D. Cal. Jun. 13, 2013) (approving
26 service award making up 1% of $600,000 settlement); Saldivar v. Priority One Med. Transp.,
27 Inc., No. CV-09-04789, 2011 WL 13213889, at *2,*16 (C.D. Cal. Mar. 22, 2011) (rejecting
28 an incentive award making up 6.97% of $215,000 settlement and instead awarding an

incentive award making up 2.32% of the settlement)).[3] Thus, the Court finds that the service award is unreasonable.[4]

Still, the Court finds a reasonable service award is warranted. Between the time this lawsuit was filed and the notice of settlement, the named Plaintiffs met multiple times with counsel in-person, provided counsel with necessary documents and information to substantiate the claims in this litigation, communicated with counsel on a regular basis via phone and/or email, prepared for and some attended the case management conference, and two of the named Plaintiffs prepared for and attended the mediation. (Doc. 66 at 8-10.)

On this record, the Court finds a $400 service award for each of the five named Plaintiffs is fair and reasonable, and a $600 service award for the two named Plaintiffs who attended the mediation session is fair and reasonable. A $3,200 service award will make up approximately 1.75% of the total settlement amount. The $11,800 denied to the named Plaintiffs will be added to the net recovery of the class.

Payments to Class Members

The settlement agreement provides for a net recovery of $102,431.43. (Doc. 66-2 at 3.) The $15,416.67 denied to Plaintiffs' counsel in attorneys' fees and the $11,800 denied to the named Plaintiffs as a service award increase the net recovery to $129,648.10. The Court finds the $129,648.10 net recovery to be fair and reasonable.

---

[3] The cases cited by Plaintiffs' counsel in support of the service awards lend additional support to this statement. (Doc. 66 at 9-10.) In Hens v. Clientlogic Operating Corp., No. CV-05-381, 2010 WL 5490833, at *1, *2 (W.D.N.Y. Dec. 21, 2010), the court approved a service award making up 1.6% of a $2.7 million settlement, and in Glass v. UBS Financial Servs., Inc., No. CV-06-4068, 2007 WL 221862, at *1, *16 (N.D. Cal. Jan. 26, 2007), the court approved an incentive award making up .22% of a $45 million settlement.

[4] The fact that the average recovery of each class member ($2,818.44) is substantially more than the amount of each service award does not change the Court's conclusion. See Online-DVD Rental, 779 F.3d 948 (explaining that less important is the disparity between an incentive award and an individual award than the number of class representatives, the average incentive award amount, and the proportion of the total settlement spent on incentive awards).

Accordingly, based on the foregoing,

**IT IS HEREBY ORDERED** granting the parties' stipulated motion to approve FLSA settlement and dismiss case. (Doc. 66.) The Clerk of Court shall dismiss Plaintiffs' claims with prejudice and terminate this case.

**IT IS FURTHER ORDERED** awarding attorney's fees in the amount of $46,250 and litigation costs in the amount $5,901.90.

**IT IS FURTHER ORDERED** awarding a $400 service award (each) to five of the named Plaintiffs, Shawn Thorson, Susan Krueger, Geoffrey Collins, Chelsea Ruttman, and Traycee Dalebout, and a $600 service award (each) to Terri Rossi Owen and Michelle Nichols for their additional participation in the settlement mediation.

**IT IS FURTHER ORDERED** awarding a $129,648.10 net recovery to the class.

DATED this 4th day of May, 2018.

Stephen M. McNamee
Senior United States District Judge

- 7 -